539 So.2d 100 (1989)
STATE of Louisiana
v.
John PERKINS, Jr.
No. 88-KA-64.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1989.
*101 William J. Guste, Harry J. Morel, Jr., and Gregory C. Champagne, 29th Judicial Dist. Parish of St. Charles, Hahnville, for plaintiff-appellee.
Phyllis M. Williams, Baton Rouge, for defendant-appellant.
Before CHEHARDY, GAUDIN and DUFRESNE, JJ.
GAUDIN, Judge.
John Perkins Jr. was tried before a jury in the 29th Judicial District Court and found guilty of attempted simple burglary. He was sentenced to three years at hard labor with credit for time served.
On appeal, Perkins assigned and briefed four trial court errors:
(1) the evidence was insufficient to support the guilty verdict,
(2) appellant's motion for a new trial, based on ineffective assistance of counsel, should not have been denied,
(3) the jury charge was incomplete and
(4) the trial judge erred in allowing a witness, George Guedry, to testify as an expert witness.
We affirm Perkins' conviction and sentence, finding no merit in these assignments of error and finding no errors patent.

ASSIGNMENT NO. 1
Citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and State v. Mathews, 375 So.2d 1165 (La.1979), Perkins contends that the evidence failed to show that he attempted the unauthorized entry of a dwelling with the intent to commit a felony or theft.[1] The testimony against him, appellant argues, viewed in the light most favorable to the state, was insufficient to permit a rational trier of fact to find guilt beyond a reasonable doubt.
*102 Thomas Monk, who resided then at 608 East Club Drive in St. Rose, Louisiana, was the targeted victim.
Monk testified that he was awakened by a noise outside a window in the early morning hours. Monk said:
"And it was early in the morning and it woke me up, so I got up to look out the window and I saw a white Ford pickup parked in the parking lot, one space over from my car. And two men got out of pickup, one on either side. And for a little while they just stood there. I don't know how long. Then one, the one from the passenger side, went around behind the apartment building or he went out of sight toward the rear of the apartment building. I went to the rear of my apartment to see if I could see what he was going to do but I didn't see anything, so I came back to my bedroom and looked out the window and they were both standing by the truck again andwhere they had been standing before. They stood there for a while. And then the one that was on the driver's side walked toward the street, down the parking lot toward the street, and he went out of sight. A short while after that I heard some noise from well, it sounded behind the apartments. So I went into the dining room to see if I could see anything, what was going on. I couldn't see anything but I heard noises. It sounded like kind of a grinding thumping noise, a sliding glass door loose in its track. Well, this may sound a little crazy but I laid down on the floor to see if I could hear what as going on. All I couldthe noise was the same no matter where I was. But then there was a loud thump a very loud thump, and the noise all stopped. It got very quiet. And I got up. I went back to the bedroom and I looked out and both men were again standing beside the pickup truck. The one on the driver's side then started digging behind the seat in the truck and he came out with a screwdriver. Hethey came toward the building and out of my line of sight but I continued to watch and then I heard noises that sounded to me like the screen was being cut. I didn't see this but it sounded that way. And I thought then that they were trying to break in so I called the police."
Monk further testified that he had a "clear view" of the suspects. He positively identified Perkins as the man with the screwdriver.
Police officer William Faucheaux testified that when he arrived at the scene, Monk and two others, a man and a woman, were sitting inside a pickup truck. Faucheaux said that plastic molding had been stripped from one of Monk's windows, that the glass had been broken and that there were fresh pry marks on a sliding glass door. Monk, at the scene, pointed out Perkins. A screwdriver was found in the truck.
Ramona Smith testified that she was the woman in the truck with Perkins and another man she identified as Michael Hill. She was asked this question:
"When you were going to the apartment, that you were arrested along with the defendant, Perkins, and Hill, when you were going there, what was the intention of John Perkins, Hill and what did you know their intentions were?"
She replied:
"To go steal."
Ms. Smith also testified about what Perkins and Hill had done before the police came. Neither Perkins nor Hill testified about the attempted burglary. Perkins took the witness stand briefly at the conclusion of the trial only to say that he agreed with his lawyer's recommendation that the defense rest without calling him (Perkins) or any other witness.
In his brief, Perkins argues that Monk was mistaken, that there were no fingerprints, that there were inconsistencies in the testimony of state witnesses, that the prosecution could not prove that the screwdriver taken from the truck was in fact the one used to pry the window, etc.; however, the direct and circumstantial evidence strongly support the verdict.

*103 ASSIGNMENT NO. 2
In this assignment of error (ineffective assistance of counsel), Perkins finds fault with his trial attorney primarily because he did not call two witnesses, Audrey Mire, a police officer on duty the night in question, the custodian of the station log book, and Hill. Ms. Mire, Perkins now contends, should have been questioned about Monk's alleged telephone call to the police station, while Hill, Perkins now argues in his brief, "... would have established the true destination and intentions of the threesome at the time of their arrest."
Monk testified that the noise woke him up at 4:15 a.m. Perkins, Hill and Ms. Smith were arrested shortly thereafter.
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court of the United States said:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
See also State v. Sepcich, 473 So.2d 380 (La.App. 5th Cir.1985), on remand at 485 So.2d 559 (La.App. 5th Cir.1986).
Here, Perkins fails to show that his representation was constitutionally deficient. The decision not to call witnesses was with Perkins' knowledge and approval. Hill has a criminal record and was charged with attempted simple burglary along with Perkins and Ms. Smith. It is likely that Perkins' trial attorney was worried about Hill's dubious credibility and the possible adverse effect his testimony might have on the jurors.
Concerning the log book, Perkins' lawyer said during trial, that he had reviewed the log book and he requested an instanter subpoena for policewoman Mire. At the termination of the state's case, however, the defense also rested. It would appear that the decision not to summon any witnesses was made intelligently, certainly with Perkins' consent, and was calculated to work in the defendant's best interests.
During the course of most criminal prosecutions, the defense must decide which witnesses, if any, to call. In the wake of a conviction, it is easy and convenient for a defendant to look back and find fault with his and his attorney's decisions. In Schwander v. Blackburn, 750 F.2d 494 (1985), the court said at page 500:
"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Where `the only evidence of a missing witness's testimony is from the defendant', this Court views claims of ineffective assistance with great caution."
The most Perkins could have shown by and through policewoman Mire's testimony was that Monk's call was not registered in the log book. Monk, however, said he made the call and Officer Faucheaux, who arrived at Monk's apartment shortly after the call, testified that he was advised by police radio of the attempted burglary of Monk's residence. Even if Monk's call was not logged inand we do not know whether it was or notit is quite apparent that someone called the police station and that Officer Faucheaux was instructed to rush to Monk's house.
If Perkins did not receive a perfect trial, he surely was given a fair one. His conviction was based on the positive, straightforward testimony of Monk, Faucheaux, *104 Guedry and Ms. Smith, not on any shortcomings of his attorney.

ASSIGNMENT NO. 3
This assignment of error combines two arguments: (1) defense counsel was lax by not requesting a specific jury charge saying that the uncorroborated testimony of an accomplice (Ms. Smith) should be treated with great caution and (2) the district judge erred in not reading such a charge even though it was not asked for.
The trial judge gave this instruction:
"As jurors, you alone determine the weight and the credibility of the evidence. As the sole judges of the credibility of witnesses, and the weight their testimony deserves, you should scrutinize carefully the testimony and the circumstances under which the witnesses testified. In evaluating the testimony of a witness, you may consider his or her ability and opportunity to observe and remember the matter about which he or she testified, his or her manner while testifying, any reason he or she may have for testifying in favor of or against the State or the defendant, and the extent to which the testimony is supported or contradicted by other evidence."
No special charges were requested pursuant to LSA-C.Cr.P. art. 807 and no contemporaneous objection was made to the judge's charge. LSA-C.Cr.P. art. 801 provides:
"A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury."
This article promotes judicial efficiency while at the same time preventing defendants from gambling for a favorable verdict and then, upon conviction, resorting on appeal to errors easily corrected by trial court objections. See State v. Marcell, 320 So.2d 195 (La.1975) at page 198.
Regardless, here there was material corroboration of Ms. Smith's testimony. It is only when the state's case is based solely on the uncorroborated testimony of an accomplice is a cautionary charge mandated. See State v. Murray, 375 So.2d 80 (La. 1979).

ASSIGNMENT NO. 4
This final assignment of error contends the trial judge erroneously overruled defense counsel's objection to George Guedry testifying as an expert witness.
Guedry, a crime lab technician employed by the St. Charles Parish Sheriff's office, was asked whether the screwdriver found in the pickup truck could have made the pry marks on the sliding glass door. Guedry described the pry marks and said, over objection, that it was possible that the seized screwdriver had been the implement used.
On cross examination, Guedry admitted that the pry marks could have been made by any sharp object. Guedry's overall testimony about the screwdriver was not prejudicial but instead was favorable to the defense.
In any event, Guedry's testimony was based on reasonable inferences from personal observations. A lay witness is entitled to so testify. See State v. Alexander, 430 So.2d 621 (La.1983), and State v. Roosevelt Hall, 519 So.2d 274 (La.App. 5th Cir.1988).
Perkins' conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:27 and 14:62.