WICKER, Judge.
Ernest Gallien appeals his jury conviction of two counts of aggravated rape, violations of La.R.S. 14:42, and one count of armed robbery, a violation of La.R.S. 14:64. The judge sentenced Gallien to two concurrent life sentences for the rapes and to forty years for the armed robbery, also concurrent with the rape sentences. The issue for all convictions is whether or not the evidence was sufficient to support the conviction of the crime. We modify and, as modified, affirm.
AGGRAVATED RAPE
Gallien first contends that the evidence was insufficient to support aggravated rape as opposed to forcible rape. Aggravated rape in this case would be noncon-sensual intercourse either “[wjhen the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution” or “[wjhen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.” La.R.S. 14:42 A(2) & (3). Forcible rape, on the other hand, would be intercourse “where the ... intercourse is deemed to without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.” La.R.S. 14:42.1.A. The difference between the two is the degree of force and *1146 the resistance of the victim. State v. Parish, 405 So.2d 1080 (La.1981), after remand 429 So.2d 442 (La.1983). Thus, in considering Gallien’s assignment of error, we must determine whether the evidence supports a conclusion that the victim was “prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution” or was “prevented from resisting the act because” Gallien was “armed with a dangerous weapon.” We find that she was.
The victim testified that she and Gallien lived in the same apartment complex and that she had seen him and spoken with him from time to time. She was awakened from a nap by a knocking on her door, and she peered through the peephole to see who was there. Gallien was wearing only shorts, which were blue, black and yellow, with some writing on the sides, and no shirt. He informed her that her parked car had just been hit and that the offender was probably still there. She then accompanied him to the parking lot but found no damage to her car. They walked back to her apartment and, when they got in a concealed passageway, he grabbed her from behind, put one hand over her mouth and nose, and with the other held a razor-sharp knife to her throat. She felt like she was smothering, and she reached up and tried to push his hand away from her face. He moved his hand and propelled her toward the bedroom. He was shorter than she but had a powerfully-built upper body. She didn’t try to defend herself through hand-to-hand combat because of his massive build and her own lack of strength. She may have scratched him unintentionally. She started praying out loud, but he made her stop. He told her to take off her clothes and lie down on the bed, and she obeyed. Then he took off his clothes, put his knife in his shorts pocket, and put the shorts next to the bed within reach. All this while, she was praying silently and thinking how she could get away. He then raped her, ejaculating on her abdomen. He got a damp towel from the bathroom and wiped his penis and her abdomen. Then he told her she had to do it with her on top, and she “saw nothing to do but to do that.” He kept trying to kiss her, but she resisted, and she felt the stubble on his face.
On the pretext of having to go to the bathroom, she ran to the front door, finding it well locked. She started screaming while trying to get the door unlocked, hoping to attract attention. Gallien knocked her down, pinned her arms behind her back, and pushed her, back to the bedroom, where he tied her hands and feet with pantyhose and partially gagged her.
Gallien then started to search the apartment for valuables, getting angry when he couldn’t find any. He went through drawers and closets, wiping everything off carefully before putting it back down. During his search, he found her late husband’s old .22 rifle, which she knew was unloaded. However, he didn’t know that. He placed the rifle behind her back and used the telephone cord to lash it, through the trigger, to her hands and feet, telling her she’d be shot if she moved. He also told her if he saw the police, or if anyone came to the door, she would be dead.
He disappeared into the living room area and she didn’t hear him for a while. At this point, he had his shorts back on and his knife in his hand. She offered him her wedding ring, telling him it was real gold; and he took it from her hand. Gallien held his knife to her abdomen and told her if he found out she was lying, she was dead. Throughout all this, she believed he wasn’t going to leave her alive to identify him.
He went back into the living room area. After a while, when she hadn’t heard anything and couldn’t see any sign of motion from the living room, she got up, dragging the rifle and the telephone. She tried to take tiny steps, but she fell and couldn’t get back up. She did get into a sitting position, inched her way into the dining room, and pulled the phone down with her teeth. She was able to push 9-1-1 and talk, even though she was partially gagged with stockings and a slip. She was also able to call her daughter on one-digit dial.
The victim’s daughter arrived first, untied her mother, and got a robe for her. The police arrived right after, and she was *1147 able to describe her assailant and tell them he lived in a nearby apartment. While police were still there, they told her they would pass by her window with a suspect so that she could identify him. When Gal-lien passed, about ten or fifteen feet away right before sunset, she immediately identified him as the rapist. .She later identified his voice for the police when they played a tape recording for her. In the courtroom she positively identified Gallien as the rapist, and she identified the shorts and the knife that he had.
The victim’s daughter testified her mother was pale and in shock when she arrived and terrified that Gallien would come back and kill her. The investigating officers confirmed her mental state: crying, nervous, shaking, and emotionally upset. The officer and the examining physician also noted the victim’s physical condition: hair in disarray; complaining of severe pain in the genital area; bleeding from the mouth, with bruises and/or abrasions on the nose, upper arm, shoulder, buttocks, shin, and vaginal opening. She also had marks on her wrists from being tied.
Gallien’s witnesses testified that he was cooperative, and they raised issues of mistaken identity and alibi. However, on appeal, he does not complain that he was wrongly identified or that his witnesses established an alibi for him. He only complains that the evidence, while sufficient to support a conviction of forcible rape, was insufficient to support a conviction of aggravated rape.
We hold that the facts outlined in the victim’s testimony — the use of a knife at her throat, the great disparity in physical strength between the victim and the rapist, and the threats to kill her — are sufficient to support a conviction of aggravated rape under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
ARMED ROBBERY
Gallien next contends that the evidence was insufficient to support a finding of armed rather than simple robbery. The difference between armed robbery, La.R.S. 14:64, and simple robbery, La.R.S. 14:65, is that in the former the robber is armed with a dangerous weapon. If Gallien was armed with a dangerous weapon for the purpose of raping his victim, and we so hold, then clearly he was also armed with a dangerous weapon, even if it was for part of the time folded up in his pocket, for the purpose of ransacking her apartment and taking her wedding ring and money from her wallet. See State v. Robinson, 404 So.2d 907 (La.1981).
We affirm the conviction of Ernest Gal-lien on two counts of aggravated rape and one of armed robbery and his two life sentences and one forty-year-sentence, all to run concurrently. We modify his sentences, however, to give him credit for time served.
MODIFIED AND, AS MODIFIED, AFFIRMED.