641 So.2d 684 (1994)
STATE of Louisiana
v.
Ricky WARNER.
No. 93-KA-0216.
Court of Appeal of Louisiana, Fourth Circuit.
July 27, 1994.
Rehearing Denied September 13, 1994.
Harry F. Connick, Dist. Atty., Susan M. Erlanger, Asst. Dist. Atty., New Orleans, for State.
*685 Herschel L. Abbott, Jr., Michael W. White, New Orleans, for Ricky Warner.
Before BARRY, JONES, and LANDRIEU.
JONES, Judge.
On January 30, 1986, defendant, Ricky Warner and Samuel Johnson were indicted for the first degree murder of Ben Pitts in violation of La.R.S. 14:30. Defendant's first trial ended in a mistrial. Thereafter, Johnson filed a motion to sever which was granted. In a second trial the jury returned a verdict finding the defendant guilty as charged. After the penalty phase of the trial, the jury recommended life imprisonment. The trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The state nolle prosequied the charges against Samuel Johnson. The trial court granted defendant Warner an out of time appeal. In an unpublished opinion, this Court affirmed defendant's conviction and sentence. State v. Ricky Warner, 551 So.2d 76 (La.App. 4th Cir.1989).
Subsequently the trial court granted defendant an out of time appeal pursuant to Lofton v. Whitley, 905 F.2d 885 (5th Cir. 1990).
STATEMENT OF THE FACTS
In the early morning hours of March 9, 1985, between twenty and thirty men were gathered near the intersection of Thalia and Magnolia Streets playing dice. A bar, the Congo Room, was located across the street from the dice games. The dice games became rowdy with arguments erupting often. Jerry Dunbar, a participant in the first game, left that game and started a second game with a smaller group.
The victim, Ben Pitts, was playing in the original game with substantial money. Dunbar testified that he saw Pitts with hundred dollar bills. An argument ensued between Pitts and another man. The man fled as Pitts threw a bottle at him. Shortly thereafter, Dunbar saw the defendant leave the dice game and walk over to where Samuel Johnson was standing. Dunbar saw Johnson give the defendant a gun. Defendant then approached Pitts and pointed the pistol at the victim's head. The defendant shot Pitts in the head as the victim began to rise from a kneeling position. The force of the impact pushed the victim back down to the ground. The participants of the dice game fled.
Randolph Gray testified that he got off of work around 2:30 a.m. and met his girlfriend outside the Congo Room. They sat on the sidewalk and watched the dice games across the street. Gray stated that he saw Johnson hand a gun to the defendant. The defendant walked back to the game and shot the victim in the head as the victim was kneeling in front of him. Gray also stated that the defendant, after shooting the victim, searched the victim and took his watch and money. Gray then ran to a nearby police station where he spoke with Officer Margaret Fairleigh. Officer Fairleigh and Gray returned to the scene and found the victim lying on the sidewalk. No other eyewitnesses spoke to the police at that time.
On October 22, 1985, Jerry Dunbar saw the defendant walking on Martin Luther King Boulevard. Dunbar went to the nearest police station and reported that the defendant had killed Pitts. The defendant was subsequently arrested.
Dr. Richard Tracy performed an autopsy on the victim. Dr. Tracy testified that the victim died of a single gunshot wound through his head which entered the left temple and travelled from the front of his head to the rear. There was no evidence of drug abuse by the victim although some alcohol was found in the victim's blood.
Lester Butler testified on behalf of the defendant. He stated that he was a participant in the dice games that evening but did not see Samuel Johnson or Jerry Dunbar on that night. Butler testified that a man named "Black Jake" shot the victim. Samuel Johnson's mother testified that her son was at home during the time the murder took place.

Errors Patent
A review of the appeal record reveals that the docket master and minute entries of the trial do not indicate whether the jury was sequestered. Louisiana Code of Criminal *686 Procedure article 791 requires that the jurors be sequestered in capital cases. However, several comments by the trial judge during the course of the trial reveal that the jury was sequestered. Thus, the record indicates that the jury was sequestered in accordance with La.C.Cr.P. article 791.
No other errors patent were found.

Assignment of Error No. 1
Defendant argues that the trial court impermissibly commented on the evidence during the state's closing argument. Louisiana Code of Criminal Procedure article 772 prohibits the trial judge from commenting on the facts of the case in the presence of the jury. However, this article does not apply to statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence, provided the remarks are not unfair or prejudicial to the defendant. State v. Knighton, 436 So.2d 1141, 1148 (La.1983), cert. denied, Knighton v. Louisiana, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984), State v. Johnson, 559 So.2d 911, 914 (La.App. 4th Cir.1990).
In the case at bar, the trial judge was stating the basis for his ruling denying the defendant's objection to the prosecutor's remarks.
[BY THE STATE:]
Both men have told you amazing consistent stories as to how that murder went down, as to the description of the man that did it, of how he came up into the dice game. How he knelt down on the ground across from Ben Pitts and how he produced the gun and having pulled the trigger on that gun and how Mr. Gray so graphically put it, but how true, blew his brains out. Because that is literally what he did. Blew his brains out for money. Who did they both identify positively, positively. They would not come in here if it wasn't true who they identified as the trigger man. As the man that pulled that trigger and killed Ben Pitts, took his life away. Just like that. Just took it. The man seated across the courtroom in the blue shirt, Ricky Warner. You are in the presence of a murderer, ladies and gentlemen.
BY MR. MASINTER:
Objection, Your Honor. It is up to the jury [to] decide whether this man is a murderer, not the District Attorney.
BY THE COURT:
The District Attorney can argue from the evidence that has been established. The same as I ruled for the defense. I will overrule your objection.
BY MR. MASINTER:
Note the objection.
Clearly, the statement made by the trial judge was made to explain his ruling. The trial judge was not commenting on the evidence presented. He simply stated that the district attorney could argue from the evidence presented. At trial, both Jerry Dunbar and Randolph Gray testified that they saw the defendant shoot the victim in the head.
Furthermore, as the state points out in its brief, defense counsel did not object to the trial court's remarks. Trial counsel's statement to "note the objection" referred to the objection which the trial court overruled. It was not an objection to the trial court's remark as argued by appellate counsel. Thus, trial counsel's failure to object to the trial judge's remark and/or seek a mistrial precludes appellate review of this assignment of error. La.C.Cr.P. article 841; State v. Michel, 422 So.2d 1115 (La.1982); State v. McLaren, 619 So.2d 664 (La.App. 4th Cir. 1993).
This assignment is without merit.

Assignment of Error No. 2
In this assignment of error defendant contends that the trial court erred in giving an unconstitutional jury charge on the definition of reasonable doubt. However, defense counsel did not object to the jury charge as given by the trial court. Under the jurisprudence established by this Court, defendant's failure to contemporaneously object to an erroneous jury instruction as to reasonable doubt precludes appellate review of this assignment of error. State v. Berniard, 625 So.2d 217 (La.App. 4th Cir.1993) on rehearing. This holding appears to contradict the Supreme Court's ruling in Sullivan v. Louisiana, *687 ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) that an erroneous jury instruction as to reasonable doubt constituted "a structural defect in the constitution of the trial mechanism." However, until such time as the Louisiana Supreme Court acts on State v. Berniard, this Court is compelled to follow it.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED