692 So.2d 1222 (1997)
STATE of Louisiana
v.
Glen STYLES.
No. 96-KA-897.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
*1224 Paul Connick, District Attorney, Terry M. Boudreaux, Assistant District Attorney, Gretna, for Plaintiff-Appellee.
Kevin V. Boshea, New Orleans, for Defendant-Appellant.
*1225 Before BOWES, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
The Jefferson Parish Grand Jury returned an indictment on April 27, 1995, charging Glen Styles and Rodney A. Taylor with one count of aggravated rape, LSA-R.S. 14:42, and three counts of armed robbery, LSA-R.S. 14:64.[1]
The charges proceeded to trial before a twelve person jury in May, 1996. After considering the evidence presented, the jury found defendant guilty of one count of aggravated rape, LSA-R.S. 14:42, and two counts of armed robbery, LSA-R.S. 14:64. However, as to the remaining count of armed robbery, the jury found defendant not guilty.
On May 28, 1996 defendant filed a motion for new trial and motion for post verdict judgment of acquittal. On June 19, 1996, the court heard and denied these motions. After defendant waived the legal delays, the judge sentenced him as follows: Count 1 (aggravated rape)life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; Count two (armed robbery)ninety-nine (99) years at hard labor without benefit of parole, probation or suspension of sentence, to run concurrently with the sentence imposed in count one; Count four (armed robbery)ninety-nine (99) years at hard labor without benefit of parole, probation or suspension of sentence, to run consecutively with the sentences imposed in counts one and two.
Defendant thereafter filed a motion for appeal.

FACTS

Count OneAggravated Rape of Lisa K. Cobb (Bordes)

Count TwoArmed Robbery of Brett Bordes and Lisa K. Cobb (Bordes)
On December 3, 1994, a young engaged couple, Brett Bordes and Lisa Cobb, were sitting in their Metairie apartment, with the door cracked open, waiting for friends to arrive. At about 7:00 p.m., two men, one of whom was armed with a gun, came into their apartment and demanded money. The victims tried to give them the little money that they had; but not satisfied, the suspect subsequently identified as Glen Styles, searched through the bedroom while the other individual subsequently identified as Rodney Taylor, pointed the gun at Brett's head and continued to demand money from the couple. Taylor, who was getting irritated, started tugging on Lisa's shirt asking if the money was in there. When the young woman told him that she did not have any money, Taylor, still armed with the gun forced her to the sofa and ordered her to disrobe. Petrified, she complied with his order. After Lisa sat on the sofa Taylor kneeled in front of her, pulled down his pants, and forced her to perform oral sex on him. He then engaged in vaginal intercourse with the woman. During this ordeal, Styles, who was now holding the gun, had it pointed at Brett who was lying on the floor pleading with them not to hurt "his baby." In response to Brett's pleas, Styles told him that if he did not shut up he would "blow his head off." As Taylor raped the young woman, Styles walked to the couch, and forced her to perform oral sex on him. When Taylor subsequently finished, Styles handed him the gun and then proceeded to engage in vaginal intercourse with the young lady. When the two men were finished raping her, they gathered some property, including a white cordless phone and a Winchester shotgun and left. When the police arrived Brett talked with them and gave them a description of the perpetrators. In the meantime the young woman who was bleeding and felt weak, was transported to the hospital.
During the course of this investigation, the police showed the victims two photographic lineups. On the first occasion they were unable to make an identification; however, *1226 both Lisa and Brett positively identified the two suspects during the second photographic lineup. Also, the two victims positively identified defendant in court as one of the perpetrators. Additionally, the property that was taken during this robbery, a cordless telephone and a shotgun, was subsequently recovered from Rodney Taylor's residence.
In connection with the rape, Dr. David Dunn performed a medical examination on Lisa Cobb who had showered by the time she went to the hospital on December 3, 1994, and he prepared a report in connection with the examination. At trial, after being accepted as an expert in the field of obstetrics and gynecology, Dr. Dunn testified that he did not observe any signs of physical trauma nor did he observe signs of trauma or any abnormalities in the pelvic examination. However, the doctor further testified that failure to observe trauma is not uncommon and that everything he observed during his examination, including the victim's emotional state; insofar as she appeared withdrawn but tense, was consistent with a woman being a victim of rape.
Also, in connection with this case fingerprints were taken from the young couple's apartment. However, no fingerprints were identified as matching those of defendant. Additionally, during the course of the investigation various scientific tests were performed, including a request for analysis of blood/physiological fluids as well as a request for hair comparisons. The results of the scientific analysis were unable to positively connect defendant to the rape of Lisa Cobb.

Count ThreeArmed Robbery of Norma Heintz
The facts surrounding this offense will not be addressed since defendant was found not guilty.

Count FourArmed Robbery of William Gilmore
On December 2, 1994, at about 9:00 p.m., William Gilmore was in the parking lot of a Metairie apartment complex when he was accosted by two men subsequently identified as Styles and Taylor. Taylor, armed with a gun, cursed at the victim, forced him to his knees, put the cocked pistol in his face, and demanded money. At this point Styles, who had positioned himself by the entrance of the building, approached the victim and yelled at him to hand over his wallet. After Mr. Gilmore surrendered his wallet the two men got upset at the small amount of money, and they started shouting obscenities at him and said that they ought "to blow my ass away." Luckily for Mr. Gilmore the two men took his wallet and the blue Igloo cooler that he was carrying but threw back his wallet as they fled. When the police arrived, Mr. Gilmore gave them a description of the two men. Although Mr. Gilmore was unable to make an identification in either of the two photographic lineups that he was shown, he subsequently made an unplanned identification of defendant. As Mr. Gilmore sat in the hallway after testifying at co-defendant Rodney Taylor's trial, he saw an individual that he recognized as one of the perpetrators, specifically as the man that stood in the entrance way, but then came out, cursed at him, and told the man with the gun to take his life. In addition to that identification Mr. Gilmore positively identified defendant in court as one of the perpetrators. The cooler which was taken during the robbery was subsequently recovered from Rodney Taylor's residence.
In addition to the testimony of the witnesses previously set forth, which revealed the factual scenario of the offenses as well as the investigations, there were several other witnesses who testified at trial. Rodney Taylor, a co-defendant, admitted his involvement in the crimes but denied any involvement on the part of Glen Styles. According to Taylor he implicated Glen Styles in his statement because Styles had robbed him. At trial Taylor claimed that Joseph Howard committed the offenses with him; however, he did not want to implicate Howard who threatened to kill his family.
Demetrius Adams, a friend of both Rodney Taylor and Glen Styles, testified that Taylor told him that he and Styles were going around robbing people and that they had gone into somebody's house, took some goods, and had sex with a girl.
Lieutenant Judith Erchul of the Jefferson Parish Sheriff's Office testified that in connection *1227 with this case she took a statement from Rodney Taylor. In his statement Taylor told Lieutenant Erchul that Glen Styles was involved with him in the commission of the offenses. She testified that there was no indication in Taylor's statement that Glen Styles had robbed him.
After the state rested its case defense counsel called several witnesses to testify in defendant's behalf and to attempt to present an alibi for him. Rosalie McCoy, defendant's grandmother, testified that on December 3, 1994, defendant cut grass all day until 5:00 p.m. at which time he went to his mother's house across the street, took a bath, and then took a nap. Defendant left the house that evening at 7:45 when a friend, Neiman, picked him up. According to Ms. McCoy, on December 2, 1994, defendant went to school, stayed late to play football, arrived home at 6:00 p.m., and went to bed at about 7:00 p.m. Ms. McCoy further testified that in connection with this case the police conducted a search of her house; however, nothing was seized as a result of the search.
Defendant's mother, Theresa Styles, testified in accordance with Rosalie McCoy concerning defendant's whereabouts on December 2 and 3, 1994. Ms. Styles testified that on the night of December 2, 1994, defendant was at home and that on December 3, 1994, defendant cut the grass, went to her house at 5:00 p.m. and stayed there until 7:45 p.m. when a friend, Neiman, picked him up.
Neiman Dunams testified that on December 3, 1994, he picked Glen Styles up from his house at 7:45 p.m. and they remained together until 1:30 a.m.
Defendant also testified in his own behalf and denied any involvement in the robberies or the rape. According to defendant on December 3, 1994, he cut the grass until 5:00 p.m., then went to sleep and left the house at 7:45 p.m. when his friend, Neiman, picked him up.
After listening to the evidence presented as set forth above, the jury found defendant guilty of one count of aggravated rape and two counts of armed robbery.

ASSIGNMENT OF ERROR NUMBER ONE
The prosecution respectfully erred in presenting "other crimes" evidence without a proper legal foundation.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court respectfully erred in the admission of this evidence.

DISCUSSION
By this assignment defendant complains about the improper admission of "other crimes" allegedly committed by the defendant. LSA-C.E. art. 404B(1) provides for the admissibility of other crimes evidence and reads as follows:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Each of defendant's complaints will now be individually addressed. Defendant initially complains about the testimony of the state's first witness, Rodney Taylor. During his testimony Mr. Taylor characterized defendant as his "enemy." When the prosecutor then asked why defendant was his "enemy," Taylor replied "because he robbed me in December, November, November 20th." Defendant did not lodge a contemporaneous objection to this witness' testimony,[2] nor did *1228 he request an admonition or a mistrial, LSA-C.Cr.P. arts. 770 and 771. LSA-C.Cr.P. art. 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose behind the contemporaneous objection rule is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, writ denied, 94-0475 (La.4/4/94), 637 So.2d 450, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. This rule relates to objectional evidence of other crimes. State v. Guidroz, 498 So.2d 108 (La.App. 5 Cir.1986).
In the present case, since defendant failed to object at trial to the testimony of Rodney Taylor relating to other crimes, he has now waived his right to assert this error on appeal. It is additionally noted that defense counsel during his cross-examination of Rodney Taylor, also questioned him about the alleged robbery by defendant.
Defendant also complains about the following testimony of state witness, Demetrius Adams, which was elicited during direct examination by the prosecutor:
Q. Now, has Rodney Taylor talked to you about his involvements in any armed robberies?
A. Yes, he did.
Q. Tell the jury what he told you about armed robberies he's committed?
A. He just say he and Glen was going around robbing people.
Defendant also failed to object to this testimony, and therefore, as in the first instance cited above he has waived his right to argue this issue on appeal, pursuant to LSA-C.Cr.P. art. 841, supra.
Defendant lastly complains about testimony that was elicited on rebuttal from Detective Jacque about an incident that occurred in September of 1994. Detective Jacque on rebuttal and in an attempt to impeach the testimony of defendant's mother, Theresa Styles, testified that in September of 1994, he went to a certain residence and spoke to Theresa Styles who informed him that nobody else was in the house. However, further investigation revealed that defendant was actually in the rear bedroom hiding under the bed. In the present case as in the other two instances, defendant failed to object to this testimony and has therefore now waived his right to raise this issue on appeal, LSA-C.Cr.P. art. 841, supra. Moreover, this testimony by Detective Jacque does not appear to constitute other crimes evidence. The only fact revealed by this testimony was that the officer wanted to talk to Glen Styles and that his mother told the officer that her son was not there when in fact he was hiding under the bed.
Based on the foregoing discussion, the issues raised in these two assignments of error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The prosecution respectfully erred in eliciting significant inadmissible hearsay during the course of the trial.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred in the admission of hearsay during the trial.

DISCUSSION
By these two assignments, defendant complains about the improper admission of hearsay testimony during the presentation of the state's case. Specifically, defendant complains about the following testimony that was elicited by the prosecutor during the direct examination of Demetrius Adams:
Q. Now, has Rodney Taylor talked to you about his involvement in any armed robberies?
A. Yes, he did.
Q. Tell the jury what he told you about armed robberies he's committed?

*1229 A. He just say he and Glen was going around robbing people.
Q. Glen who?
A. Glen Styles.
Q. When did he tell you that?
A. I don't know exactly what day it was.
Q. Has it been a while?
A. Yeah, it been a while now.
Q. Did Glen tell youstrike that. Did Rodney tell you that he did anything else with Glen?
A. Yeah.
Q. Tell the jury what he told you he did?
A. Rodney told me they went in somebody house and took some goods out there.
Q. Did they do anything to the girl?
A. Yeah, Rodney told me he did.
Q. Tell the jury what Rodney told you he did?
A. They said they had sex with the girl.
Q. Who was with him when they had sex with the girl?
A. Glen.
Q. Glen who?
A. Glen Styles.
Defendant did not object to this testimony and therefore, pursuant to LSA-C.Cr.P. art. 841, supra, he has waived his right to argue this error on appeal. (See discussion on contemporaneous objection rule in assignments of error numbers one and two).
Defendant also complains about repeated references to Rodney Taylor's trial which was elicited to inform the jury that Taylor was found guilty as charged. Defendant does not cite any specific instances but refers the court to various pages of the record.
LSA-C.E. art. 609.1 reads, in part, as follows:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
Pursuant to this article, it appears that the testimony about Taylor's conviction would have been admissible, at least during his own testimony. Moreover, although defense counsel noted objections to some of this testimony, he at no time objected based on hearsay. See State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102, where it was concluded that defendant's failure to object contemporaneously to witness' testimony on hearsay grounds precluded review of hearsay issue on appeal.
Based on the foregoing discussion, these two assignments are without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
The trial court, respectfully, did err in failing to charge the law applicable to the case.

DISCUSSION
In the present case, the trial judge gave the following jury charge regarding accomplices:
An accomplice is defined as one who is associated with another in the commission of a crime. An accomplice is a competent witness, either for the State of [sic] for the Defense, whether he has been convicted or not, or whether he be joined in the same indictment with the person or persons on *1230 trial or not, provided he is not put on trial at the same time.
Corroboration, though desirable, is not indispensable; the jury may convict on the uncorroborated testimony of an accomplice, but experience has shown, that while you may convict upon such testimony subject it to a careful examination in the light of the other evidence in the case, and not convict upon such testimony alone, unless satisfied, of its truth, and that you can safely rely on it.
What the law means by corroboration of the testimony of an accomplice is not merely the corroboration of the accomplice's narrative and the mere details of how the crime was committed, but some real and independent corroboration tending to implicate the accused in the commission of the offense charged.
Counsel for defendant noted an objection to this charge, specifically to the exclusion of the words "with great caution" in terms of the viewing of accomplice testimony.
LSA-C.Cr.P. art. 802 provides the scope of the general charge given to the jury shall be as follows:
(1) As to the law applicable to the case;
(2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and
(3) That the jury alone shall determine the weight and credibility of the evidence.
Special charges are governed by LSA-C.Cr.P. art. 807 which reads:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
In State v. Schaffner, 398 So.2d 1032 (La. 1981), the Louisiana Supreme Court addressed the issue of the trial judge's refusal to give defendant's requested special jury charge relating to accomplice testimony. In Schaffner, supra at p. 1035, the court stated as follows:
Where the state's case relies upon the uncorroborated testimony of an accomplice, the trial judge should instruct the jury to treat such testimony with caution; however, such a cautionary instruction is not necessary in all cases in which an accomplice testifies on behalf of the state. Where there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required. State v. Murray, 375 So.2d 80 (La.1979); State v. May, 339 So.2d 764 (La.1976); United States v. Lee, 506 F.2d 111 (D.C.Cir.1974), cert. denied, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). The matter is one within the sound discretion of the trial court. As noted in Lee, it is enough if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation.
After so stating, the Louisiana Supreme Court concluded that the evidence presented at trial materially corroborated the testimony of the accomplice, and therefore, the trial judge did not abuse its discretion by refusing to give the special cautionary instruction requested by defendant. Moreover, the court concluded that the question of the credibility to be attached to the testimony of the accomplice was adequately covered by the trial judge's general charge on credibility of witnesses. See also State v. Perkins, 539 So.2d 100 (La.App. 5 Cir.1989), writ denied, 544 So.2d 397 (La.1989), reconsideration denied, 547 So.2d 354 (La.1989); State v. Durham, 94-1036 (La.App. 5 Cir. 4/16/96), 673 So.2d 1103; State v. Swartz, 444 So.2d 660 (La.App. 1 Cir.1983). In the present case, unlike the situation in State v. Schaffner, supra, the trial judge did instruct the jury on accomplice testimony. Defendant approved the instruction but objected to *1231 the exclusion of the language "with great caution" in terms of the viewing of accomplice testimony. Although the charge did not use the terminology "with great caution," the message that an accomplice's testimony was to be viewed very carefully was conveyed to the jury, both in the instruction on accomplices and in the general jury charge relating to the credibility of witnesses.
Based on the charges as a whole, the jury was well aware that it should view the accomplice's testimony with great caution. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SIX
The trial court respectfully erred in commenting on the facts of this case.

DISCUSSION
In the present case, during the state's closing argument the prosecutor was discussing the testimony of one of its witnesses, Reginald Jacque. Specifically, the following excerpt of transcript forms the basis for this assignment of error:
[MS. McELWEEASSISTANT DISTRICT ATTORNEY]:
Then you heard from the mother, who I cannot use the word mistake, I cannot use that innocent word because it wasn't a mistake on her part, it was a lie. Glen Styles' mother came into this courtroom and lied and we proved it, if you believe Reggie Jacque from New Orleans.
Reggie Jacque went out to that house some months before this rape looking to talk to Glen Styles. And his mother said he wasn't there. He was hiding under a bed. Now y'all put it together, was it a mistake, was it a lie.
Mr. Hesni asked Ms. Styles, Glenn Styles' mother, would you he to help your son, no. Have you ever lied to help your son? No. Well, you tell me, is it helping your son if he's hiding under a bed and the police want to talk to him and you tell them he's not there?
MR. LAWRENCE [DEFENSE COUNSEL]:
Your Honor, I'd like to object at this time to this rendition of the State's attorney as to what Mr. Jacque testified to.
THE COURT:
I believe it's accurate, Mr. Lawrence, I'm going to allow the close to continue.
MR. LAWRENCE:
Note my objection.
THE COURT:
Your objection is so noted for the record. Go ahead, Ms. McElwee.
Defendant now contends that the trial judge's ruling on his objection was an impermissible comment on the evidence which constituted significant prejudice to the rights of the accused.
LSA-C.Cr.P. art. 772 provides that "[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted." This article does not apply to statements of the trial judge's reasons for rulings on objections relating to the admissibility of evidence or to explain the purpose for which evidence is offered or admitted, provided the remarks are not unfair or prejudicial to the defendant. State v. Knighton, 436 So.2d 1141 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Gabriel, 542 So.2d 528 (La.App. 5 Cir.1989), writ denied, 558 So.2d 566 (La.1990). Moreover, the trial judge's comments on the evidence have been held to be harmless error if those remarks do not imply an opinion as to the defendant's guilt or innocence. State v. Felde, 422 So.2d 370 (La.1982), cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983); State v. Gabriel, supra.
In the present case, the statement made by the trial judge was clearly to explain her ruling, and did not constitute a comment on the evidence presented. See State v. Warner, 93-0216 (La.App. 4 Cir. 7/27/94), 641 So.2d 684, writ denied, 94-2517 (La.1/27/95), 649 So.2d 379, where the appellate court concluded that the trial judge's comment during the prosecution's closing argument, that prosecutor could argue from the evidence presented, explained why court overruled defense counsel's objection to argument, *1232 and thus, was not a comment on the evidence.
Furthermore, in the present case, defense counsel did not object to the trial court's remarks. Trial counsel's statement to "note my objection" referred to the objection which the trial court overruled. Thus, defense counsel's failure to contemporaneously object to the trial judge's remark waived his right to argue this issue on appeal. LSA-C.Cr.P. art. 841; State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La. 1982); State v. Gultry, 471 So.2d 804 (La. App. 5 Cir.1985); State v. Warner, supra.
Based on the foregoing discussion, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
The verdict of the trial court in this matter is contrary to the law and evidence.

DISCUSSION
By this assignment, defendant challenges the sufficiency of the evidence used to convict him of aggravated rape and armed robbery. Defendant does not point to any specific element that the state failed to prove, but rather focuses on the alleged improper admission of testimony as set forth in assignments of error numbers one through four. Defendant argues that without this objectionable testimony the jury would not have been presented with sufficient evidence to return verdicts of guilty.[3]
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution to find the essential elements of the crime beyond a reasonable doubt. State v. Mussall, 523 So.2d 1305 (La.1988); State v. Hebrard, 94-410 (La.App. 5 Cir. 1/31/95), 650 So.2d 352.
In the present case, defendant was convicted of one count of aggravated rape and two counts of armed robbery. Aggravated rape is defined in LSA-R.S. 14:42 as follows:
A. Aggravated rape is a rape[4] committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), "participate" shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.
[Footnote added]
In the present case, notwithstanding the evidence defendant complains about in assignments of error numbers one through four, it appears that the state, through the testimony of the victim sufficiently proved the elements of aggravated rape as well as the identification of the defendant as the perpetrator. Regarding the aggravated rape, the victim testified that two men entered *1233 her apartment, that each one forced her to engage in vaginal sexual intercourse, and that penetration was accomplished. During this ordeal, the perpetrators were armed with a gun and they each took turns pointing the gun at her fiance as he was lying on the floor begging them to leave her alone. This testimony was corroborated at trial by her fiance at the time, Brett Bordes. In addition, both the victim and Brett Bordes positively identified defendant in a photographic lineup and at trial as the perpetrator of this offense. It has been held that the testimony of the victim alone is sufficient to establish the elements of the offense even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense. State v. Turner, 591 So.2d 391 (La.App. 2 Cir.1991), writ denied, 597 So.2d 1027 (La.1992); State v. Brown, 620 So.2d 508 (La.App. 4 Cir.1993), writ denied, 625 So.2d 1062 (La.1993).
Based on the foregoing discussion, the state proved the elements of the offense beyond a reasonable doubt. See State v. Creel, 508 So.2d 859 (La.App. 5 Cir.1987), writ denied, 532 So.2d 171 (La.1988); State v. Doss, 522 So.2d 1274 (La.App. 5 Cir.1988), writ denied, 530 So.2d 563 (La.1988); State v. Walder, 504 So.2d 991 (La.App. 1 Cir.1987), writ denied, 506 So.2d 1223 (La.1987); and State v. Turner, supra, where the evidence was found sufficient to sustain the defendants' convictions of aggravated rape.
Defendant was also convicted of two counts of armed robbery. LSA-R.S. 14:64 defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon." State v. Thomas, 604 So.2d 52 (La.App. 5 Cir.1992).
Regarding the armed robbery of Lisa Cobb and Brett Bordes, the testimony of the victims established that defendant and another perpetrator, armed with a gun, entered their apartment and took a cordless phone as well as a shotgun. The victims positively identified defendant in a photographic lineup as well as at trial as the perpetrator.
Regarding the armed robbery of William Gilmore, his testimony revealed that he was accosted in the parking lot by defendant and a co-perpetrator, that they took his wallet and an ice chest while pointing a gun at his head and threatening his life. Although Mr. Gilmore was unable to positively identify defendant in a photographic lineup, he positively identified him at trial as one of the perpetrators. See State v. Jackson, 527 So.2d 1039 (La.App. 5 Cir.1988); State v. Gallien, 613 So.2d 1145 (La.App. 5 Cir.1993); State v. Thomas, supra; and State v. Franklin, 501 So.2d 881 (La.App. 5 Cir.1987), appeal after remand, 519 So.2d 292 (La.App. 5 Cir.1988), where the evidence was found to be sufficient to sustain the defendants' convictions for armed robbery.
In the present case, regarding all three counts, the jury obviously chose to believe the testimony of the victims and other state witnesses over that of defendant and his alibi witnesses. It is not the function of an appellate court to evaluate the credibility of witnesses and overturn the trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Thomas, supra. Viewing the evidence, as set forth supra, in the light most favorable to the prosecution it appears that a rational trier of fact could have found defendant guilty beyond a reasonable doubt of one count of aggravated rape and two counts of armed robbery.
Based on the foregoing discussion, this assignment merits little consideration.

ASSIGNMENT OF ERROR NUMBER EIGHT
Respectfully, the sentence imposed by the trial court is excessive and unconstitutional.
DISCUSSION
In the present case defendant was convicted of one count of aggravated rape and two counts of armed robbery. For the aggravated rape conviction, the trial judge sentenced defendant to the mandatory term of life imprisonment at hard labor without benefit of parole, probation or suspension of *1234 sentence.[5] For each of the two counts of armed robbery, the trial judge sentenced defendant to ninety-nine years at hard labor without benefit of parole, probation, or suspension of sentence.[6] Defendant now contends that the ninety-nine year sentence imposed on each of the two armed robbery convictions, as well as the consecutive nature of the sentence on count four, are excessive. Defendant argues that the imposition of the maximum sentence was not justified because he is not the "absolutely worst offender" considering that he did not have a prior felony conviction, that he was not a multiple offender, and that he did not possess an extensive juvenile record. Defendant additionally argues that the trial judge failed to fully consider all aspects of LSA-C.Cr.P. art. 894.1 and the sentencing guidelines and also failed to consider any mitigating circumstances prior to the imposition of sentence.[7]
The Louisiana Constitution in Article 1, Section 20 prohibits the imposition of excessive punishment. Even a sentence within the prescribed statutory limit may violate a defendant's right against excessive punishment. State v. Sweeney, 443 So.2d 522 (La.1983).
A sentence is constitutionally excessive if it is grossly out of proportion to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentencing is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Bradham, 94-71 (La.App. 5 Cir. 5/31/94), 638 So.2d 428. The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside as excessive absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Riche, 608 So.2d 639 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993). Maximum sentences are reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982), appeal after remand, 446 So.2d 1210 (La.1984); State v. Riche, supra.
In the present case, when the trial judge imposed sentence on defendant, she stated as follows:
THE COURT:
The State of Louisiana versus Glen Styles. The matter set today is a sentencing of Glen Styles, case No. 95-2328. Following a jury trial the defendant was convicted of one count of Louisiana Revised Statute 14:42, the count of aggravated rape and two counts of Louisiana Revised Statute 14:64, two counts of armed robbery.
In determining the sentence to be levied, the Court considered the felony sentencing guidelines set out by the Louisiana Sentencing Commission. The Court is aware that the approximate range set out on the grid is life imprisonment for the conviction of aggravated rape and 27.5 to 30 years for the conviction of armed robbery.
However, in this case the Court has found it necessary to deviate from the guidelines, finding that the guidelines as written would deprecate from the seriousness of this particular offense.
In making this determination the Court has considered both aggravating and mitigating circumstances. The Court found the following aggravating circumstances to apply.

*1235 1) The offender's conduct during the commission of the offense manifested deliberate cruelty to the victim.
2) The offender knowingly created a risk of death or great bodily harm to more than one person.
3) The offender used threats of or actual violence in the commission of the offense.
4) The offense resulted in a significant permanent injury or significant economic loss to the victim or his family.
5) The defendant used a dangerous weapon in the commission of the offense.
6) The offense involved multiple victims or incidents or incidents for which separate sentences have not been imposed.
7) The offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has an element the use, attempted use or threatened use of physical force against the person or property of another and which, by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense.
The Court finds no mitigating circumstances and, in fact, finds the testimony in this case evidenced deliberate cruelty and callousness to the victims in the commission of these multiple offenses.
The Court imposes the following sentence on Glen Styles.
Conviction of aggravated rape of Lisa K. Cobb, the Court sentences the defendant to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
For the conviction of armed robbery upon Brett Bordes and Lisa K. Cobb, the Court sentences the defendant to 99 years at hard labor without benefit of parole, probation or suspension of sentence to run concurrent with the previous sentence of aggravated rape.
For the conviction of armed robbery upon William Gilmore, the Court sentences the defendant to 99 years at hard labor without benefit of parole, probation or suspension of sentence. This sentence is to run consecutive to the sentences for aggravated rape and armed robbery of Brett Bordes and Lisa K. Cobb.
I remand you at this time to the custody of the Department of Corrections.
As shown by the above portion of transcript, the trial court carefully considered the sentencing guidelines, listed aggravating circumstances which allowed it to depart from the suggested sentences, considered possible mitigating circumstances and found none, and then rejected the guidelines pursuant to its great discretion. See State v. George, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, writ denied, 95-1151 (La.9/29/95), 660 So.2d 855.
Moreover, a review of the jurisprudence reveals that ninety-nine year sentences imposed upon defendants convicted of armed robbery have been previously upheld. See State v. Marshall, 94-0461, (La.9/5/95), 660 So.2d 819; State v. Douglas, 389 So.2d 1263 (La.1980); State v. Carter, 570 So.2d 234 (La.App. 5 Cir.1990); State v. George, supra; State v. Hunter, 92-2535 (La.App. 4 Cir. 4/13/95), 654 So.2d 781, writ denied, 95-1217 (La.10/6/95), 661 So.2d 464; State v. Washington, 482 So.2d 118 (La.App. 4 Cir.1986).
In State v. Douglas, supra at pp. 1267-1268, the Louisiana Supreme Court noted:
This court does not lightly consider the matter of a 99-year sentence imposed without hope of release on parole. There may be sound arguments against the frequent use of such sentences, but these arguments address themselves to the reasoned discretion of the sentencing judge. The function of the reviewing court is not merely to substitute this court's judgment for that of the trial court, but to determine whether the court below manifestly abused its discretion.
In light of the facts of the present case, trial judge did not abuse her discretion in imposing the maximum sentences allowed by statute. Moreover, the trial judge was within her sentencing discretion in ordering that the sentence imposed on count four be *1236 served consecutively with the sentences imposed on counts one and two, LSA-C.Cr.P. art. 883.[8]
Based on the foregoing discussion, defendant's claim of excessiveness is without merit.

ERROR PATENT DISCUSSION
A review of the record for errors patent was conducted in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals that while the minute entry/commitment reflects that defendant was given credit for time served, the transcript does not so reflect.[9] LSA-C.Cr.P. art. 880 provides that "[t]he court, when it imposes sentence shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." Since this article is mandatory in nature, defendant is entitled to credit for time served, despite the fact that it is not specifically stated in the transcript. Although this error is noted, it really is of no consequence since the minute entry/commitment reflects credit for time served.

DECREE
The convictions and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] The trial court, on October 30, 1995, granted Styles' motion to sever, allowing each of the parties to proceed to trial individually. This appeal deals only with Glen Styles. As to co-defendant Taylor, he proceeded to trial and was found guilty of the four counts alleged in the indictment. Following imposition of sentence, he appealed to this court. On October 1, 1996, this court affirmed Taylor's convictions and sentences.
[2] In the appellate brief, defense counsel claims that an objection was lodged to this testimony at pages 517-519. These objections were not made to the witness' responses concerning the robbery, but rather were made to the leading nature of the prosecutor's questions. Pursuant to LSA-C.Cr.P. art. 841, a defendant must make known the grounds for his objection and is limited on appeal to those grounds articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984); State v. Baker, 582 So.2d 1320 (La.App. 4 Cir.1991), writ denied, 590 So.2d 1197 (La.1992), cert. denied, 506 U.S. 818, 113 S.Ct. 62, 121 L.Ed.2d 30 (1992).
[3] See State v. Hearold, 603 So.2d 731 (La.1992), where the Louisiana Supreme Court discussed the appellate review procedure in cases where issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors. See also State v. Bonck, 613 So.2d 1125 (La.App. 5 Cir.1993), writ denied, 620 So.2d 840 (La.1993).
[4] LSA-R.S. 14:41 defines rape as follows:

A. Rape is the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary and any sexual penetration, vaginal or anal, however slight is sufficient to complete the crime.
[5] LSA-R.S. 14:42C provides, in part, that "[w]hoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
[6] LSA-R.S. 14:64B provides that "[w]hoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence."
[7] It is noted that at the time the sentences were imposed, defendant orally objected and stated the basis for his objection to be excessiveness (R., p. 982). Therefore, he properly preserved this issue for review despite the fact that he did not file a written motion to reconsider sentence. See LSA-C.Cr.P. art. 881.1 and State v. Yeager, 93-699 (La.App. 5 Cir. 1/25/94), 631 So.2d 1206.
[8] LSA-C.Cr.P. art. 883 reads, in part, as follows:

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.
[9] Generally, where there is a discrepancy between the minute entry and transcript, the transcript should prevail. State v. Lynch, 441 So.2d 732 (La.1983).