398 So.2d 1032 (1981)
STATE of Louisiana
v.
Edward J. SCHAFFNER.
No. 80-KA-2227.
Supreme Court of Louisiana.
May 18, 1981.
Dissenting Opinion May 19, 1981.
*1033 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Mamoulides, Dist. Atty., Harry T. Hardin, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Jack Quarles, Robert Garrity of Indigent Defender Program, New Orleans, for defendant-appellant.
MARCUS, Justice.[*]
Edward J. Schaffner was charged by bill of information with armed robbery in violation of La. R.S. 14:64. After trial by jury, defendant was found guilty of simple robbery and sentenced to serve seven years at hard labor. Although defendant designated fifteen errors to be urged on appeal, he briefed and argued only Assignment of Error No. 10 in this court. Therefore, the remaining assignments of error are considered to have been abandoned.[1]
In Assignment of Error No. 10, defendant contends the trial judge erred in refusing to give his requested special charge No. 1 relating to accomplice testimony to the jury.
Defendant's requested special charge No. 1 read as follows:
The State has presented alleged accomplices of the defendant as witnesses. You, the jury, are further charged that an accomplice is defined as one who is associated with another in the commission of a crime and may be used as a witness. Whether the accomplice has been convicted or not, whether he has pleaded guilty or dismissed, or whether he be joined in the same Bill of Information or indictment with the person on trial or not, corroboration is desirable but it is not always indispensible. You may convict upon the uncorroborated testimony of an accomplice, still you should act upon such testimony with great caution, subject it to careful examination in the light of the other evidence in the case, and you are not to convict upon such testimony alone, unless satisfied after a careful examination, if its truth, and also that you can safely rely on it. What the law means by corroboration of the testimony of an accomplice is not merely the corroboration of the accomplice's narrative and the mere details of how the crime was committed but some real and independent corroboration intending to implicate the defendant in the commission of the offense charged. It is not sufficient to corroborate an accomplice as to the facts of the case. Generally, he should be corroborated as to some material fact which tends to prove that the accused was connected with the crime that's charged.
The trial judge refused to give the requested special charge, finding it a "confused statement of the law." Defendant noted his objection to the ruling of the court.
On the morning of March 8, 1979, a young male entered the Commercial Bank at 4937 Veterans Boulevard in Jefferson Parish, Louisiana, and revealed a gun to one of the bank tellers. He handed a plastic bag to the teller who placed money and a dye bomb in the bag. The lone gunman then took the bag and left the bank.
Officer Ken Meynard, responding to a call regarding the robbery, observed defendant walking through the parking lot of the Burger King located a half block from the bank. The officer exited his vehicle and ordered defendant to stop. He explained that there had been a bank robbery and asked defendant for identification. Defendant produced his Ohio driver's license and told the officer he was just walking in the area. An elderly man then came from behind an apartment building and gave the officer a bag of bills stained with red dye that had been thrown over the back fence *1034 of the building. After calling for assistance, the officer further questioned defendant and learned that he was staying with a girlfriend at her apartment at 217 Hickory Avenue. Defendant was then turned over to another officer but was subsequently released when the bank teller stated that defendant was not the same man who had robbed her.
Officer Meynard, along with Detective Youngblood resumed the search of the area and noticed a 1974 green Ford Torino with an Ohio license plate and one headlight on backed into an apartment parking space. They radioed headquarters requesting registration information on the vehicle and learned that it was registered to defendant. Detective Beckendorf later arrived on the scene and had the vehicle towed to the auto pound. Other police officers then proceeded to 217 Hickory and were allowed into the apartment by defendant's girlfriend. Although defendant was not there, the officers waited for his return. The telephone rang and his girlfriend indicated that defendant was on the line. Officer Bond was allowed to listen in on the conversation and heard defendant say that he did not want to turn himself in until he found out that Ben had been apprehended. The officers remained at the apartment until they were notified by radio that defendant had been arrested.
While in custody, defendant told Detective Youngblood that he had recently driven from Ohio to New Orleans with Ben Eicher, who was about eighteen years old, and was staying with a girlfriend at 217 Hickory. He also said, "I heard Ben robbed a bank and parked the car around the corner," but denied that he had any personal involvement in the robbery.
Later that evening, Detectives Beckendorf and Gordon went to the police auto pound to check the vehicle prior to obtaining a search warrant. They found the vehicle's trunk pried open and observed pry marks on the inside lid of the trunk and tools that had apparently been used to force the trunk open from the inside.
Based on information from defendant, Ben Eicher was arrested a few weeks later in Ohio. He confessed to the robbery and agreed to testify against defendant. He stated that he drove down from Ohio with defendant and, after staying in New Orleans for a couple of days, they decided to drive to Mexico. They ran out of money in Texas so defendant sold his CB radio for gas money and they headed back to New Orleans. After arriving early in the morning, they went to several stores looking for a toy gun to use in a bank robbery that defendant was planning. Defendant obtained a silver cap gun from the last store they went to. The plan called for Eicher to enter the bank, show a teller the gun and request that money from both drawers be put into a bag. Defendant warned Eicher to instruct the teller not to remove the last bill in each compartment because such action would set off an alarm. Defendant also told Eicher not to hand the bag to the teller because doing so would give the teller the opportunity to place a dye bomb in the bag. After obtaining the money, Eicher was to walk out of the bank and run to defendant's car which would be located near the bank. The trunk would be left slightly open and Eicher was to lock himself inside the trunk. Defendant would be sitting in a restaurant near the bank during the robbery and would walk to his car after observing Eicher exit the bank. He would then drive to Jackson, Mississippi, where he would stop the car to let Eicher out of the trunk. They would then drive to Memphis.
Eicher testified that he entered the bank as planned and had a teller fill up the bag with money. As he was running to the car, the bag started to smoke. He threw the bag down because he did not want to get the dye on his hands. He then entered the trunk of defendant's car and shut the lid from the inside. Later that afternoon, he pried the trunk open and discovered he was in the auto pound. He closed the trunk and moving between cars made his way to the fence and then to the highway and went to the French Quarter. After staying in New Orleans for nearly two weeks, he hitchhiked *1035 back to Youngstown, Ohio, where he was subsequently arrested. Eicher admitted that the state made a deal to reduce his charge from armed robbery to simple robbery in exchange for testimony against defendant.
La.Code Crim.P. art. 807 provides generally that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Where the state's case relies upon the uncorroborated testimony of an accomplice, the trial judge should instruct the jury to treat such testimony with caution; however, such a cautionary instruction is not necessary in all cases in which an accomplice testifies on behalf of the state. Where there is material corroboration of the accomplice's testimony, the cautionary accomplice instruction is not required. State v. Murray, 375 So.2d 80 (La.1979); State v. May, 339 So.2d 764 (La.1976); United States v. Lee, 506 F.2d 111 (D.C.Cir. 1974), cert, denied, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). The matter is one within the sound discretion of the trial court. As noted in Lee, it is enough if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation.
In the instant case, the testimony of the accomplice, Ben Eicher, was materially corroborated. Eicher was identified by the bank teller as the gunman in the robbery. The money bag, which was stained from the dye bomb, was found on the route from the bank to defendant's car. While at the auto pound, the trunk of defendant's car was pried open from the inside, corroborating Eicher's story that the robbery plan called for him to hide in the trunk of defendant's car after robbing the bank. Defendant was observed by police walking in the parking lot of the Burger King near the bank, corroborating Eicher's story that defendant planned to observe him leaving the bank while waiting at a restaurant. Furthermore, defendant was clearly identified by police at the scene when he was initially detained and his car was found near the bank backed up in an apartment parking space. In a phone conversation to his girlfriend, defendant was overheard by an officer stating that he did not want to turn himself in until he found out that Ben had been apprehended. Although Ben Eicher was not a suspect at the time defendant was arrested, defendant told police, "I heard Ben robbed a bank and parked the car around the corner," and provided information that led to the arrest of Eicher.
The evidence presented at trial materially corroborated the testimony of the accomplice. Thus, the trial judge did not abuse his discretion by refusing to give the special cautionary instruction requested by defendant. The question of the credibility to be attached to the testimony of the accomplice was adequately covered by the trial judge's general charge on credibility of witnesses.[2]

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs and assigns reasons.
*1036 GARRISON, J. ad hoc, concurs in the affirmation.
CALOGERO, J., dissents and assigns reasons.
LEMMON, Justice, concurring.
I agree that there was corroboration of the accomplice's testimony in this case. However, when there is an adequate jury instruction regarding bias, I do not believe that the trial court needs to give a special instruction warning the jury about an accomplice's uncorroborated testimony.
In some jurisdictions the uncorroborated testimony of an accomplice cannot sustain a conviction. See Pollard v. State, 574 S.W. 2656 (Ark.1978); Jones v. State, 368 So.2d 1265 (Miss.1979). Louisiana, wisely in my opinion, has not adopted this rule. State v. Matassa, 222 La. 363, 62 So.2d 609 (1953); State v. May, 338 So.2d 764 (La.1976). In Louisiana the weight to be accorded to the testimony of an accomplice is determined by the jury (or the judge in a bench trial), which is the sole arbiter of the credibility of witnesses. See C.Cr.P. art. 802(3).
Therefore, a special instruction cautioning the jury to be wary of the testimony of an accomplice is not "an absolute necessity in all cases in which an accomplice testifies on behalf of the state". See State v. Murray, 375 So.2d 80, 88 (La.1979). The trial judge, of course, must give an adequate instruction regarding the duty of the jurors to assess carefully the credibility of all witnesses and should give (as this trial judge did) some guidance in terms of various factors which may properly be considered, such as "his or her manner on the witness stand, the probability or improbability of his or her statement, the interest or want of interest he or she may have in the case and every fact and circumstance surrounding the giving of the testimony which may aid... in weighing (his or her) testimony".
Louisiana judges are statutorily prohibited from commenting to the juries on the credibility of witnesses. See C.Cr.P. arts. 772 and 806. This rule constitutes legislative recognition that it is exclusively the jury's function to assess credibility. See C.Cr.P. art. 802(3). Jurors can (and must) call upon the sum total of their experience with other human beings in performing this most difficult and critical task. Jurors do not need to be "warned" about the probability that an accomplice may have misrepresented the facts in an effort to save himself from a more severe penalty. R.S. 15:492 allows liberal cross-examination to expose the bias or interest of witnesses, including accomplices who become prosecution witnesses.
The jury in this case had all the information and guidance it needed to fairly perform its vital credibility assessment function without a special "accomplice instruction". The question regarding the necessity of an "accomplice instruction" was within the sound discretion of the trial judge, and I find no abuse of that discretion under the circumstances presented here.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion because I do not believe that there was materially corroborating evidence of the accomplice's testimony and, therefore, it was error for the trial judge to refuse to give defendant's requested cautionary accomplice instruction to the jury, or at least a similar one.
While the majority correctly points out that the cautionary accomplice instruction is not required if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation, I disagree with the majority that such evidence was presented in this case. Defendant was observed in the parking lot of a Burger King Restaurant near the bank shortly after the robbery, but his presence there was explained by the fact that he was residing at an apartment nearby. Defendant's presence near the bank can hardly be considered corroborative of the fact that he was involved in the robbery under these circumstances. Since there was no evidence corroborating the accomplice's testimony that defendant was involved in the bank robbery the requested jury instruction should have been given.
NOTES
[*] Judges Jim Garrison, Lawrence A. Chehardy and Denis A. Barry of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Marcus, Blanche and Lemmon.
[1] State v. Blanton, 325 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).
[2] The trial judge's general charge contained the following provision regarding the credibility of witnesses:

You find from the evidence or lack of evidence what facts have been proven, and what facts have not been proven. For this purpose, you are the sole judge of the credibility of the witnesses and the weight to be given their testimony. In determining the credibility of witnesses you may take into account his or her manner on the witness stand, the probability or improbability of his or her statement, the interest or the want of interest he or she may have in the case, and every fact and circumstances surrounding the giving of the testimony which may aid you in weighing their testimony. If you believe that any witness in the case either for the State or defense has willfully and deliberately testified falsely to any material fact for the purpose of deceiving you, then I charge you that you are justified in disregarding the entire testimony of such witness as proving nothing and unworthy of belief.