STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


06-1587


STATE OF LOUISIANA

VERSUS

CHARLES W. HATCH


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NO. 8229-05
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE
**********


SYLVIA R. COOKS
JUDGE


**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir and James T. Genovese, Judges.

**CONVICTIONs AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**


G. Paul Marx
Louisiana Appellate Project
P.O. Box 82389
Lafayette, LA  70598-2389
(337) 237-2537
COUNSEL FOR DEFENDANT/APPELLANT:
    Charles W. Hatch

Charles C. Foti, Jr.
Attorney General - State of Louisiana
Molly L. Balfour, Assistant Attorney General
Louisiana Department of Justice
P.O. Box 94005
Baton Rouge, LA  70804-9005
(225) 326-6200
COUNSEL FOR APPELLEE:
    State of Louisiana

**COOKS, Judge.**

Defendant, Charles Hatch, appeals his convictions and sentences on the charges of aggravated battery and armed robbery. For the following reasons, we affirm the convictions, but vacate the sentences and remand for resentencing.

## FACTS

On September 13, 2004, at approximately 7:00 p.m., Shane Hilton answered the door of his home and two men forced their way into his home. Hilton testified that one of the men wore a ski mask and the other held a bat. Once the men were inside his home, Hilton ran to a room in the back of the house and tried to hold the door closed. However, the two men pushed down the door. Once inside the room, the two men told Hilton to get down and asked where his wallet or money was. Hilton then determined that the masked man was Joseph Ripley, his ex-wife's brother. Hilton testified that every time he said Ripley's name he was hit with the bat. Hilton eventually led the two men to his wallet in the kitchen. When Hilton handed over his wallet, the man with the gun cocked the gun, and Hilton "guessed" the man pulled the trigger. Hilton was then pistol-whipped. Hilton testified that at that time, he "kind of blacked out" and started swinging at both men. He then ran out the front door to a neighbor's house and called the police. Hilton also called his ex-wife, Angela Greenlee, and told her she did not succeed. Later, Angela and her sister showed up at Hilton's home.

Winnie Sumpter, Hilton's neighbor, testified that she pulled into her driveway at approximately 10:00 p.m. and saw two men cutting across her yard. While her car was still running, but in park, a man approached her car, took out a gun, and used it to break her car window. The man then pointed the gun at her, demanded her money, and reached into her car and took her purse.

Police prepared a photographic lineup which contained a photograph of Clint Mott, who had been known to hang out with Ripley and who resembled the physical description given by Hilton and Sumpter. However, a photograph of the Defendant was not placed in the lineup. Hilton testified that when viewing the photographic lineup he informed police that Mott resembled the man who had been in his home, but he was not 100 percent certain about the identification. Sumpter identified Mott in the lineup, but told police the person who took her purse had a fuller face. Mott was subsequently arrested. At that time, Mott had bleached blond hair rather than brown hair, as depicted in the photograph used in the lineup. After police spoke to Mott and his acquaintances, Angela Perkins and Michael Livingston, Mott was cleared as a suspect.

Ripley was subsequently arrested. He gave a statement to police and brought them to the crime scene to collect evidence. In his statement, Ripley implicated Defendant and stated the two men went to Hilton's home because Hilton hit Angela Greenlee, Ripley's sister and Hilton's ex-wife.

Based on Ripley's statement, police arrested Defendant on September 15, 2004. Defendant gave a statement to police indicating that Angela offered to pay him to break Hilton's legs. Defendant also admitted he and Ripley went to Hilton's residence to threaten him and that Ripley wore a mask to conceal his identity because Hilton knew him. Defendant further admitted he and Ripley attacked Hilton using a baseball bat and a handgun. Additionally, Defendant admitted busting Sumpter's car window as she pulled into her driveway, and he stated that Ripley took Sumpter's purse.[1]

Defendant was charged by bill of information with one count of aggravated

_____

[1] The statements of Ripley and the Defendant differ regarding which of the two possessed the bat and the gun and who took Sumpter's purse.

battery, a violation of La.R.S. 14:34, and one count of armed robbery, a violation of La.R.S. 14:64. Defendant entered a plea of not guilty.

At trial, Defendant testified that he was at home on the date of the offenses, September 13, 2004. However, on September 14, 2004, he met Ripley and Mott at Ripley's home. At that time, Ripley told him what had occurred the previous day. Mott then informed Defendant that he had felony charges pending against him at that time and told Defendant, "if you take this charge for me, I'll give you 3,000 roll pills."[2] Mott also promised to bond Defendant out of jail and then give him the pills. Defendant testified that at the time of the discussion, he thought the charges involved were purse snatching and battery. Defendant denied committing the acts set forth in his statement to police. He testified he was told what to say in the statement, and nothing in his statement was true.

Detective Brandon Dever testified that he wrote Defendant's statement, and he wrote what was told to him by Defendant. Additionally, Defendant was allowed to read the statement.

Defendant called his sister, Krista Raymond, to testify on his behalf. She testified that she had phone contact with Defendant on September 13, 2004 between the hours of 8:00 p.m. and 12:00 a.m. At that time, she stated that Defendant was at his mother's home.

Mike Greenlee, Angela's ex-husband, testified that he came home from work, on a date he could not specifically recall, to find Angela, Ripley, and the Defendant at the home of his in-laws. Later that night, Angela left her parents' home and did not return until a little after 10:30 p.m. While Angela was gone, Ripley and Defendant were not at the house. Some time after her return, Angela's cell phone rang, and

---

[2] Mott was referring to Ecstasy. The Defendant testified that three thousand pills would have a street value of approximately sixty thousand dollars.

Hilton was on the line yelling and screaming at her. Angela and her sister then went to Hilton's home.

A jury returned a verdict of guilty of aggravated battery and armed robbery. Defendant was subsequently sentenced to twelve years at hard labor without benefit of probation, parole, or suspension of sentence for armed robbery and to ten years for aggravated battery. The sentence for aggravated battery was ordered to run consecutively to the sentence for armed robbery. However, the court suspended the sentence for aggravated battery and placed Defendant on supervised probation for a period of five years, to begin upon his release from the sentence imposed for armed robbery. Defense counsel objected to the sentence.

Defendant has appealed, asserting his conviction was based on insufficient evidence, and his sentence was excessive.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends his conviction was based on insufficient evidence. Specifically he contends the evidence shows he made a false confession, the victims could not identify him as the perpetrator, and there was no other evidence in support of his being the perpetrator.

Defendant asserts the victims identified Mott as the perpetrator and never identified him. The police arrested Mott, but released him because his hair had been bleached blond. However, there was no evidence regarding when Mott's hair was dyed. Additionally, Detective George McNeil admitted that Mott could have changed his hair color to alter his appearance.

Defendant further asserts his inculpatory statement was given undue weight and the trial court erred in failing to consider the weight of the evidence against Mott

-4-

and the lack of corroboration for the Defendant's confession.[3]

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal*, 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary*, 03-3067 at p. 18, 931 So.2d at 311; *Neal*, 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall*, 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright*, 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147.
>
> Moreover, in Louisiana, an accomplice is qualified to testify against a co-perpetrator even if the State offers him inducements to testify. *Neal*, 00-0674 at p. 11, 796 So.2d at 658. The inducements would merely affect the witness's credibility. *Id*. at p. 12, 796 So.2d at 658. Additionally, a conviction may be sustained on the uncorroborated testimony of a purported accomplice, although the jury should be instructed to treat the testimony with great caution. *State v. Tate*, 01-1658, pp. 4-5 (La.5/20/03), 851 So.2d 921, 928. When the accomplice's testimony is materially corroborated by other evidence, such language is not required. *Id*.; *State v. Castleberry*, 98-1388, p. 13 (La.4/13/99), 758 So.2d 749, 761. An accomplice's testimony is materially corroborated "if there is evidence that confirms material points in an accomplice's tale, and confirms the defendant's identity and some relationship to the situation." *Castleberry*, 98-1388 at p. 13, 758 So.2d at 761 (quoting *State v. Schaffner*, 398 So.2d 1032, 1035 (La.1981)).

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

The sole issue in this case is Defendant's identity as the perpetrator.

Accordingly, we must determine whether the State negated any reasonable probability

of misidentification. The victims did not identify the Defendant as the perpetrator.

---

[3] Defendant also asserts a new trial should have been granted. We note a Motion for Judgment of Acquittal and a Motion in Arrest of Judgment were filed and denied. However, no Motion for New Trial was filed.

Both victims identified Mott, who had brown hair, in a photographic lineup, but indicated they were not certain he was the perpetrator. Mott was arrested and, at that time, had bleached blond hair. Police were unsure when Mott dyed his hair. As noted by the Defendant, Detective McNeil testified a person would "probably" dye his hair in order to change his appearance. However, after Mott was arrested, Detective McNeil asked Mott's friends, Perkins and Livingston, how long Mott's hair had been blond and Mott was then released. Ripley testified he saw Mott in Kroger a month prior to the incident and, at that time, Mott's hair was brown. However, he also testified that he last saw Mott two to three months prior to his arrest. Mike Greenlee testified he last saw Mott a few months prior to the incident and Mott's hair was blond at that time.

There was also testimony regarding whether the perpetrator had facial hair. Sergeant Glenn Romero testified that Sumpter informed police that the perpetrator had a smooth complexion and Hilton indicated he possibly had a goatee. Detective Dever testified that Hilton stated the perpetrator possibly had a goatee. At trial, Hilton denied telling police about a goatee. Sumpter testified that the perpetrator was clean-shaven. In the photograph admitted as State Exhibit 28, Defendant has facial hair. However, there was no testimony from any witnesses regarding whether Defendant had facial hair on the date of the offense. The only testimony regarding the issue was given by Detective Dever who testified that he believed the picture of Defendant was taken on the date of his arrest, but he was not certain.

Defendant confessed to the crimes at issue. He alleges his confession was false. Ripley confessed to his involvement in the crimes at issue and implicated Defendant. Ripley's statement differed from the Defendant's regarding which of the two possessed the bat and the gun and who took Sumpter's purse. Defendant

challenges Ripley's credibility by noting Ripley had been charged with aggravated rape and the charge was dropped. Additionally, as a result of the incident, Ripley pled guilty to the aggravated battery of Hilton and the charges regarding Sumpter were dropped. As a result of the plea bargain, Ripley was sentenced to seven years in exchange for his agreement to testify truthfully in this matter.

Defendant also put forth evidence of an alibi. His sister, Krista Raymond, testified Defendant was at his mother's home on the night of the incident. However, Mike Greenlee testified Defendant was with Ripley and Angela. Angela later left and Defendant and Ripley were no longer at his in-law's home. Additionally, after Angela returned, Hilton called her and Angela and her sister went to Hilton's home. Hilton testified that on the night of the incident he called Angela, then she and her sister showed up at his home.

Although Hilton and Sumpter identified Mott in a photographic lineup, neither were certain he was the perpetrator. Hilton and Sumpter never specifically identified Defendant, however, Defendant confessed to the crime and Ripley, in his testimony at trial and his statement to police, implicated the Defendant. Furthermore, Mike Greenlee's testimony, along with the corroborating testimony of Hilton, tends to prove Defendant was not at his mother's home on the night of September 13, 2004. Thus, based on the evidence presented, the State negated any reasonable probability of misidentification. The jury clearly chose to believe Defendant's confession and other testimony linking him to the offenses at issue. Those credibility determinations should not be second-guessed by this court. Accordingly, this assignment of error lacks merit and Defendant's conviction is affirmed.

**ASSIGNMENT OF ERROR NO. 2**

In his second assignment of error, Defendant contends the trial court imposed

an excessive sentence. Defendant was sentenced to twelve years at hard labor without benefit of probation, parole, or suspension of sentence for armed robbery and to ten years for aggravated battery. The sentence for aggravated battery was ordered to run consecutively to the sentence for armed robbery. However, the trial court suspended the sentence for aggravated battery and placed Defendant on supervised probation for a period of five years, to begin upon Defendant's release for the sentence imposed for armed robbery. Defendant argues the cumulative effect of the sentences results in him being under government supervision for twenty years, which is an excessive sentence as well as an illegal split sentence.

In accordance with La.Code Crim.P. art. 920, we review all appeals for errors patent on the face of the record. After reviewing the record for errors patent, we find an error patent in the sentence imposed for aggravated battery which requires that the sentences be vacated and the case remanded for resentencing.

Louisiana Code of Criminal Procedure Article 893(A) prohibits the suspension of a sentence for a conviction of certain enumerated crimes of violence, including aggravated battery. Thus, the trial court imposed an illegally lenient sentence for aggravated battery. *See State v. Bazar*, 99-752 (La.App. 3 Cir. 2/2/00), 758 So.2d 844 and *State v. Cox*, 02-333 (La.App. 5 Cir. 9/30/02), 829 So.2d 521. The sentence imposed for aggravated battery is vacated and the case remanded for resentencing on that count. This holding renders moot Defendant's assignment of error that his sentence is excessive.

**DECREE**

For the foregoing reasons, Defendant's convictions for aggravated battery and armed robbery are affirmed. However, Defendant's sentence for aggravated battery is vacated as illegally lenient, and the case is remanded for resentencing on that count.

**CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**