STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-42

STATE OF LOUISIANA

VERSUS

ERIC JOHN ANDERSON

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 302703
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

James C. Downs
**District Attorney - Ninth Judicial District Court**
Michael W. Shannon
**Assistant District Attorney**
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

**Edward K. Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Eric John Anderson**

**GREMILLION, Judge.**

On May 3, 2010, Defendant, Eric John Anderson, Devonta Mitchell, and a person referred to only as "Fleet" entered the home of Sammie Williams uninvited, armed with guns, and looking for money alleged to be in the house. Upon leaving the house, Defendant approached Mabel Fisher, who was sitting outside in her vehicle, and attempted to take her purse. The men then fled in a stolen SUV. One of the men fired at Fisher as he ran to the SUV and again as she followed them in her car. Defendant and Mitchell were apprehended the next day heading towards Baton Rouge in a different stolen vehicle.

Defendant was charged by a bill of information with one count of unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4, one count of attempted second degree murder, violations of La.R.S. 14:27 and 14:30.1, one count of aggravated burglary, a violation of La.R.S. 14:60, and one count of attempted armed robbery with the use of a firearm, violations of La.R.S. 14:27, 14:64, and 14:64.3. A jury found Defendant guilty as charged on all counts.

Defendant was sentenced to five years at hard labor for unauthorized use of a motor vehicle; twenty-five years at hard labor for attempted second degree murder, with the first ten years to be served without the benefit of probation, parole, or suspension of sentence; ten years at hard labor for aggravated burglary; and twenty years at hard labor, without benefit of probation, parole, or suspension of sentence, for attempted armed robbery, plus five years for the use of a firearm, for a total of twenty-five years at hard labor. All the sentences were ordered to be served concurrently. While Defendant objected to the excessiveness of the sentences at the sentencing hearing, no written motion to reconsider the sentence was filed.

Defendant argues three assignments of error: 1) the evidence adduced at trial was insufficient to support Defendant's convictions beyond a reasonable doubt; 2) Defendant received ineffective assistance of counsel; and 3) the sentences were constitutionally excessive under the circumstances of the case.

We affirm Defendant's convictions and sentences.

## INSUFFICIENT EVIDENCE

Defendant argues that the evidence submitted at trial was insufficient to sustain the convictions. He bases this primarily on Mitchell's assertion at trial that his confession concerning Defendant's participation in the offenses was a complete fabrication. Defendant argues that nothing other than Mitchell's false confession connects him to the crimes alleged. The law here is black letter:

> "In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). . . . [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Captville*, 448 So.2d 676, 678 (La.1984). Furthermore, when the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. *State v. Weary*, 03-3067 (La.4/24/06), 931 So.2d 297; *State v. Neal,* 00-0674 (La.6/29/01), 796 So.2d 649. Positive identification by only one witness is sufficient to support a conviction. *Weary,* 03-3067 at p. 18, 931 So.2d at 311; *Neal,* 00-0674 at p. 11, 796 So.2d at 658; *State v. Mussall,* 523 So.2d 1305, 1311 (La.1988). It is the factfinder who weighs the respective credibilities of the witnesses, and this court will generally not second-guess those determinations. *State v. Bright,* 98-0398, p. 22 (La.4/11/00), 776 So.2d 1134, 1147.

*State v. Hughes*, 05-992, pp. 5-6 (La. 11/29/06), 943 So.2d 1047, 1051.

Unauthorized use of a motor vehicle is defined as "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent,

2

or by means of fraudulent conduct, practice, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4. Second degree murder is defined as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" La.R.S. 14:30.1. Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). Furthermore, La.R.S. 14:64.3 provides for additional punishment if the dangerous weapon is a firearm. Attempt is defined in pertinent part, as:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

La.R.S. 14:27. Finally, aggravated burglary is the unauthorized entering of an inhabited dwelling where a person is present, with the intent to commit a felony or any theft, when armed with a dangerous weapon. La.R.S. 14:60(1).

Williams testified that she was at her home on Clinton Street in Alexandria, around 1:00 p.m., with two infants she was babysitting. She said that she was in the living room watching TV and talking on the phone when she heard someone in the house. When she went to investigate, she encountered two men in the hallway. She did not know who they were. Both men wore black hoodies with the hoods pulled up over their faces. She said that both men were armed, one with a pistol and one with a "funny looking gun about that long. . . . Like a sawed off shotgun or something." One of the men told her not to look at them or she would be shot.

They began searching the house, repeatedly asking her "where's the room." She stated that she had a nephew, Eric, who had been living with her, but she had

3

recently evicted him for selling marijuana. She asked if they were looking for him. Suddenly, she heard a car horn honk from outside. One of the men went to look out, and when he described the car to her, she knew it was her long-time friend, Fisher. They told her to tell the person in the car to come into the house, but she denied knowing who the person was and would not call out to her. The men took the battery out of her phone and left the house. Williams said she got the other house phone from the bedroom and called the police. She heard two gunshots at that time. She thought they had shot Fisher.

Fisher testified that she saw a man standing by the door of Williams' house as she approached in her vehicle. When she honked her horn, two other men exited the house. She could not describe the men who came out of the house because they were wearing hoodies but could see they were black men. Two of the men walked up to her car; both men had guns. One stood by her window and the other one got into the passenger-side seat and tried to grab her purse. She fought back, and eventually he left the car without the purse and ran towards a white SUV. She stated that one of the men turned and fired the gun twice in the direction of her car. She followed the fleeing SUV and managed to get the license plate number. She stated that at one point, the SUV stopped and one man got out and fired the gun again at her vehicle several times. She was talking to the police on her cell phone while this was happening. The police advised her to return to Williams' house, which she did. She described the two men as young. She could not describe the guns, except that she said one gun was longer, like a shotgun.

Corporal Shannon Blackwood, a "line officer" with the Alexandria Police Department, testified that he received a dispatch regarding a home invasion. He went to Williams' home and spoke with her and Fisher. After he returned to the

4

police station, he received another dispatch that the white SUV reported as the vehicle used by the perpetrators was located abandoned behind a house next to a levee. The license plate number was the same as given to the police by Fisher. However, the license plate actually belonged to a vehicle registered in Natchitoches, Louisiana. The SUV had been reported stolen approximately six weeks prior to this incident. Donald Rachel testified that he had loaned the SUV to a friend and it was never returned. A few weeks later, he received in the mail a picture of the vehicle as it ran a red light in New Orleans and was ticketed for the violation.

James David Fail, a trooper with the Louisiana State Police Department, testified that the day after the incident at Williams' house, he stopped a truck for speeding on I-10 on the Whiskey Bay bridge. The driver of the truck was Mitchell, who was sixteen years old at the time and did not have a driver's license, and Defendant, who was twenty-three years old and had a suspended license, was Mitchell's passenger. The trooper located two handguns in the truck, a nine millimeter Smith and Wesson and a .32 caliber revolver. Furthermore, the truck had just been reported stolen in Alexandria.

A DNA search was done on the handguns located in the truck and a partial DNA sample was found. Winnie Kurowski, a forensic chemist with the Acadia Criminalistics Laboratory, testified that she got a partial DNA profile. Mitchell could not be excluded as a possible source of the profile, although Kurowski was able to exclude Defendant as a possible source. She did state, however, that the guns were not tested for DNA until a year later and that the guns had been handled by others by that time. Both Mitchell's and Defendant's fingerprints were located on the SUV that fled the scene of Williams' house.

Finally, Mitchell testified. Despite his confession given on May 10, 2010, Mitchell adamantly denied that Defendant was with him when the offenses were committed. He called himself a "compulsive liar." He further denied that the guns found in the truck were his, or that anyone shot at Fisher as he fled from the house in the SUV.

Detective David Foshee, an officer with the Alexandria Police Department, interrogated Mitchell on May 10, 2010. He explained that because Mitchell was a juvenile they had to wait until Mitchell's mother could arrive from New Orleans before they could question him. A transcript of the interrogation was given to the jury to read as they viewed the video of the interview.

A summation of the interrogation is as follows:

After Mitchell was *Mirandized*, he confessed to his, Defendant's, and "Fleet's" participation in the offenses. He first told the detective that he had obtained the SUV in New Orleans from L.D., who he did not know at all. He said that he, Defendant, and "Fleet" "went on a lick went to go hit a lick[.]" He explained that "Fleet" knew there was money in Williams' house because he knew that "Dude E" had money, so they went to rob "Dude E." He said that "Fleet" stayed outside as a lookout while he and Defendant went into the house. After he and Defendant encountered Williams and she asked if they were looking for Eric, he figured out that Eric was "Dude E." He admitted that he was armed with a pistol and Defendant was armed with a rifle. They searched for money but found nothing. When they heard a horn honk, they went back outside. Mitchell said he went to the SUV while "Fleet" and Defendant approached Fisher's car. He said that Defendant and "Fleet" switched guns and that Defendant got into the car with the driver. He described how Defendant shot at the girl in the car as he ran

6

towards the SUV. He also stated that Defendant was driving the SUV and, at one point, Defendant stopped the car and got out and fired again at Fisher as she followed them. He described where they dumped the SUV. He also explained that he stole the truck they were eventually stopped in from a convenience store late that evening when the driver got out and left the keys in the ignition.

Defendant is correct that his primary connection with the offenses was through Mitchell's confession. The two victims were not able to identify the men who accosted them because their faces were hidden. Defendant's fingerprint was located on the stolen SUV, indicating that he was in the vehicle. He was also in the company of Mitchell the very next day in another stolen vehicle. While Mitchell was arrogant and belligerent on the stand at Defendant's trial, he admitted to the offenses but maintained that he lied about Defendant's presence during the robbery attempts. He further denied that he even knew a "Fleet." However, the two victims encountered more than one man. Williams met up with two men inside her house, and Fisher described three men, one standing at the door and two who came out of the house when she honked the horn.

As noted in *State v. Hatch,* 06-1587 (La.App. 3 Cir. 6/6/07), 964 So.2d 394, a conviction may be sustained on the uncorroborated testimony of a purported accomplice. "For an accomplice's testimony to be materially corroborated 'it is enough if there is evidence that confirms material points in the accomplice's tale, and confirms the defendant's identity and some relationship to the situation.'" *State v. Castleberry,* 98-1388, p. 13 (La. 4/13/99), 758 So.2d 749, 761, *cert. denied,* 528 U.S. 893, 120 S.Ct. 220 (1999) (quoting *State v. Schaffner*, 398 So.2d 1032, 1035 (La.1981)).

7

Although Mitchell, Defendant's accomplice, claimed that he lied during the interrogation session, he described the events in his confession exactly as the victims had described the events. Mitchell's confession was remarkably consistent with the victims' testimonies.

The jury heard all the testimony, including the confession and Mitchell's recantation. The jury obviously did not believe Mitchell's trial testimony, and we find no error in that conclusion. We have neither the authority nor the inclination to second-guess the jury. *See State v. Ryan,* 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268.

The State proved all the elements of the crimes beyond a reasonable doubt, including the identity of Defendant. Defendant entered an inhabited dwelling without authorization or invitation, armed with a firearm, with the intent to rob someone inside the house. He further attempted to rob Fisher of her purse while armed with a firearm. He shot at her on two occasions, thus, exhibiting the requisite intent to kill her. Specific intent may be inferred from the circumstances; aiming a gun directly at a victim and pulling the trigger supports a finding of specific intent to kill. *State v. Lawson*, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516. He arrived in Alexandria in a stolen vehicle and left Alexandria in a different stolen vehicle. While Mitchell claimed that he was the one who stole the second vehicle, he said that Defendant knew the vehicle was stolen. At the very least, Defendant was a principal to Mitchell's offense. Principals are those who are "concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime[.]" La.R.S. 14:24.

There is no merit to this assignment of error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

First, Defendant asserts that defense counsel failed to submit into evidence two letters that Mitchell wrote to Defendant approximately one year prior to Defendant's trial indicating that Mitchell lied when he confessed to the offenses and told the police that Defendant participated in the offenses. Defendant argues in brief that had defense counsel submitted the letters, they would have corroborated Mitchell's story that he lied. Second, he argues that defense counsel failed to file a motion to quash.

> Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. *State v. Prudholm,* 446 So.2d 729 (La.1984); *State v. Johnson*, 557 So.2d 1030 (La.App. 4 Cir.1990); *State v. Reed,* 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. *State v. Seiss*, 428 So.2d 444 (La.1983); *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Garland*, 482 So.2d 133 (La.App. 4 Cir.1986); *State v. Landry*, 499 So.2d 1320 (La.App. 4 Cir.1986).

> The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller,* 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland, supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow,* 612 So.2d 191, 199 (La.App. 4 Cir.1992).

9

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515.

The record before this court is not sufficient to discern whether defense counsel's performance was defective because he failed to introduce the letters that Mitchell wrote to Defendant. Defendant contends that "these letters prejudiced [his] case to such a degree that the only proper remedy would be to vacate his convictions and sentences." However, a review of the letters, which Defendant attached to a "Motion for New Attorney" filed on May 22, 2012, suggests there may have been a trial strategy in not presenting them. For this reason, a contradictory hearing would be the most appropriate means in which to address whether defense counsel's performance was defective. Accordingly, we relegate this allegation to post-conviction relief.

As for Defendant's assertion that defense counsel should have filed a motion to quash, in brief, he argues:

Although counsel objected to the jury panel not being a proper cross-section of the community, and his objection was overruled, counsel should have filed a Motion to Quash. La.Code Crim.P. art. 535 provides that a Motion to Quash the jury venire shall be filed at least three days before the commencement of trial. Although the trial court's reasons for overruling defense counsel's objection is not in the record, counsel's motion was properly denied on procedural grounds. There can be no strategic reason for not filing the Motion to Quash.

10

The only mention of this objection is found in a minute entry. The objection to the composition of the jury panel was made prior to *voir dire*. There is nothing else in the record before this court concerning this objection and ruling. Furthermore, it is not clear what Defendant would have quashed—the indictment or the jury panel. That counsel was insufficient is speculation. Defendant's argument and briefing is insufficient. There is no merit to this allegation.

## EXCESSIVE SENTENCES

Defendant argues that although defense counsel objected to the sentences at the conclusion of the hearing, defense counsel did not file a written motion to reconsider; thus, defense counsel rendered ineffective assistance of counsel. He also argues that the trial court failed to adequately state for the record the factual basis used for imposing the sentences, as required by La.Code Crim. P. art. 894.1.

As noted, at the conclusion of the sentencing hearing, Defendant objected to the sentences as excessive. He gave no reasons why the sentences would be considered excessive in the present case. Nor did Defendant file a written motion to reconsider the sentences. Louisiana Code of Criminal Procedure Article 881.1(E) provides:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

However, in the current case, Defendant argues that defense counsel was ineffective for failing to file a motion to reconsider the sentences. Failure to file a motion to reconsider does not necessarily constitute ineffective assistance of counsel. Nevertheless, Defendant may have a basis to claim ineffective assistance if he can show a reasonable probability that but for defense counsel's error, his

11

sentence would have been different. *State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602. Furthermore, in *State v. Francis*, 99-208 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, *writ denied*, 00-544 (La. 11/13/00), 773 So.2d 156, this court noted that where the record was sufficient to resolve the claim, and the claim was raised by assignment of error on appeal, it may be considered. This record is sufficient and we will address the claim of ineffective assistance of counsel for failure to file a motion to reconsider the sentence.

For the offense of unauthorized use of a motor vehicle, La.R.S. 14:68.4(B) provides for a range of imprisonment of not more than ten years, with or without hard labor and a fine of up to $5,000.00. Defendant received five years at hard labor. For the offense of attempted second degree murder, La.R.S. 14:30.1 and 14:27(D)(1)(a) provide for imprisonment of no less than ten years nor more than fifty years at hard labor, without the benefit of parole, probation, or suspension of sentence. Defendant received twenty-five years imprisonment. For the offense of aggravated burglary, La.R.S. 14:60 provides for a range of imprisonment of no less than one year nor more than thirty years. Defendant received ten years at hard labor. Finally, for the offense of attempted armed robbery, La.R.S. 14:64(B) and 14:27 provide for a range of punishment no less than five years and no more than forty-nine and one-half years. Defendant received twenty years imprisonment, plus five years because of the use of a firearm. *See* La.R.S. 14:64.3(B). All of the sentences were ordered to be served concurrently for a total of twenty-five years at hard labor.

The first question is whether there was a likelihood that had defense counsel filed a motion to reconsider, the trial court would have reduced the sentences. At the sentencing hearing, the trial court questioned Defendant about his personal

history and noted that although there was an indication of a prior conviction, there was no documentation establishing a criminal history and that Defendant was only twenty-five years old, which the trial court considered mitigating factors. The trial court went on to state:

> Ah, all right. Under Article 894.1, I believe that the following would apply: "There's an undo [sic] risk that during a period of suspended sentence or probation that the defendant will commit another crime". Of course, he's not entitled to probation or suspended sentence. "The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution and a lesser sentence will deprecate the seriousness of the defendant's crime." Under the aggravating factors I find that the Defendant knowingly created a risk of death or great bodily injury to more than one person. Number six: "the offender used threats of or actual violence in the commission of the offense. The offender committed the offense in order to facilitate or conceal the commission of another offense." He committed a burglary to commit the robbery. "The offender used a dangerous weapon in the commission of the offense." Number eighteen is applicable: "The offender foreseeably endangered human life by discharging a firearm". In [sic] other relevant aggravating factors, Mr. Shannon?

> . . . .

> All right. One of the things that I like to consider is whether or not there's rehabilitation. I do not believe that that's appropriate; a sentence is not going to rehabilitate the Defendant. Ah, he does not have sufficient education, training, or life experience to be rehabilitated. He's twenty-five years old, [doesn't] have an education, has not worked. I think that there needs to be a sentence imposed that will create gen, general deterrence in the community. I'm not aware of any victim input. I am aware that the victim in the case, ah, one was an elderly person and the other one chased Mr. Anderson down in her car, was able to get a, his license plate number, or part of it, and Mr. Anderson and his co-defendant were shooting at her when she was trying to do that. And I think that there needs to be a sentence that would specifically deter the Defendant from committing future criminal conduct.

The trial court heard the victims' testimonies at trial and based its sentencing decisions on the evidence, as noted above. The sentences imposed were one-half the allowed range of imprisonment in the case of the unauthorized use of a motor

13

vehicle and less than one-half of the allowable range of imprisonment in the remaining offenses. It is unlikely the trial court would have reduced these moderate sentences had defense counsel filed a motion to reconsider the sentences.

The second question is whether this court finds that the sentences are excessive. *State v. Barling*, 00-1241, 00-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331; and *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

Here, the sentences were, in all but one of the offenses, less than one-half the allowable range of imprisonment. The most severe sentence was imposed on the offense of attempted second degree murder, twenty-five years, and all sentences were imposed concurrently. In *State v. Sampy*, 07-1059 (La.App. 3 Cir. 3/5/08), 978 So.2d 553, *writ denied,* 08-845 (La. 11/10/08), 996 So.2d 1066, this court did not find a thirty-year sentence uncommon for the offense of attempted second degree murder. The defendant, who was a first felony offender, shot her husband who confronted her in a parking lot with his pregnant girlfriend. Assessing whether the sentence was excessive, this court noted that the defendant also shot the girlfriend but received a manslaughter conviction and a sentence of ten years, which was ordered to be served concurrently.

In the current case, Defendant could have received a more onerous total sentence considering there were two victims involved and the applicable sentences imposed could have been ordered to be served consecutively, for a total of forty years imprisonment.

Considering the circumstances of this case, this court cannot find that the trial court abused its vast discretion when it sentenced Defendant. Furthermore, the trial court adequately stated the factual basis for the sentences as required by

14

La.Code Crim.P. art. 894.1. The sentences do not shock this court's sense of justice. There is no merit to this assignment of error.

## DECREE

Defendant's convictions and sentences are affirmed.

**AFFIRMED**.